IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| KEITH ALEX WALKER and LENNETH CORDELL ABRAM, | ) ) ) **Case No.**   3:21cv250-GHD-RP |
| PLAINTIFFS, | ) ) **COMPLAINT FOR VIOLATIONS OF** ) **THE CIVIL RIGHTS ACT OF 1871, 42** ) **U.S.C. § 1983** |
| v. | ) ) |
| CITY OF SOUTHAVEN, a Mississippi municipality; JORDAN P. ROBERTS; HUNTER M. FOSTER; CALVIN KIRKLAND; CHRIS T. RAINBOLT; CHAUNCEY STOKES; DAVID TESSARO; JOSEPH BECKER; DAN K. RUSSELL; KEBRON M. SMITH; MARIO C. MAGSBY; TYLER R. WHITE; WAYLON D. BANKS; and FREDRICK PAYNE, | ) ) **JURY TRIAL DEMANDED** ) **PURSUANT TO FED.R.CIV.P. 38(a) & (b)** ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) ) ) |

**COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Keith Alex Walker (hereinafter "Plaintiff Walker") and Plaintiff Lenneth Cordell Abram (hereinafter "Plaintiff Abram") (collectively "Plaintiffs"), by and through their designated attorneys, allege as follows:

**I.**

**NATURE OF THE ACTION**

1.     Plaintiffs were subjected to multiple civil rights violations at the hands of a group of Southaven Police Department officers when they were searching for lost keys in a Waffle

House parking lot. Officers acting without any reasonable suspicion or probable cause that a crime had occurred, rammed Plaintiffs' vehicle and then proceeded to viciously and repeatedly beat Plaintiffs who were complying with orders. In a blatant effort to conceal these unlawful acts, the officers conspired with their supervising officer to charge Plaintiffs with various crimes that they did not commit and subjected them to the further insult of incarceration. This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 in order to remedy Defendants' actions in causing Plaintiffs to be deprived of their constitutional rights secured by the Fourth and Fourteenth Amendments of the United States Constitution by subjecting them to excessive force, unlawful arrest, unlawful detention, and malicious prosecution. Plaintiffs were arrested and detained without reasonable articulable suspicion or probable cause that they had committed any crime or were about to commit any crime, and Plaintiffs were maliciously prosecuted upon fraudulent statements of multiple Southaven officers and as a result suffered unlawful seizure and detention and physical and emotional harm.

## II.

### SUBJECT MATTER JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred within this judicial district.

**III.**

**THE PARTIES AND PERSONAL JURISDICTION**

4.      Plaintiff Walker is a citizen of the United States, a resident of Shelby County, Tennessee, and a male of African American descent.

5.      Plaintiff Abram is a citizen of the United States, a resident of Shelby County, Tennessee, and a male of African American descent.

6.      Defendant City of Southaven, Mississippi, (hereinafter the "City") is a Mississippi municipality liable for its policies, customs, practices, and the failure to train its employees, and is a party defendant to this matter. Service upon the City is perfected by service upon the Mayor, Darren Musselwhite, at 8710 Northwest Dr., Southaven, Mississippi 38671. The City is a political subdivision of the State of Mississippi and among its other functions operates and maintains a law enforcement agency known as the Southaven Police Department (hereinafter "SPD").  At all times relevant hereto, the City and its agents acted under color of state law.

7.      Defendant Jordan Paul Roberts ("Defendant Roberts"), badge number 1395, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Roberts at 1122 Windy Ridge Rd., West Point, Mississippi 39773. Upon information and belief, Defendant Roberts is no longer a SPD officer. Defendant Roberts is named in this action in his individual capacity.

8.      Defendant Hunter Matthew Foster ("Defendant Foster"), badge number 1404, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Foster at

4845 Cantana Drive, Walls, Mississippi 38680. Upon information and belief, Defendant Foster is no longer a SPD officer. Defendant Foster is named in this action in his individual capacity.

9. Defendant Calvin Kirkland ("Defendant Kirkland"), badge number 1393, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Kirkland at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Kirkland is named in this action in his individual capacity.

10. Defendant Chris T. Rainbolt ("Defendant Rainbolt"), badge number 1320, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Rainbolt at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Rainbolt is named in this action in his individual capacity.

11. Defendant Chauncey Stokes ("Defendant Stokes"), badge number 1411, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Stokes at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Stokes is named in this action in his individual capacity.

12. Defendant David Tessaro ("Defendant Tessaro"), badge number 1277, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Tessaro at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Tessaro is named in this action in his individual capacity.

13. Defendant Joseph Becker ("Defendant Becker"), badge number 1409, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Becker at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Becker is named in this action in his individual capacity.

14. Defendant Dan K. Russell ("Defendant Russell"), badge number 1401, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Russell at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Russell is named in this action in his individual capacity.

15. Defendant Kebron M. Smith ("Defendant Smith"), badge number 1406, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Smith at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Smith is named in this action in his individual capacity.

16. Defendant Mario C. Magsby ("Defendant Magsby"), badge number 1420, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Magsby at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Magsby is named in this action in his individual capacity.

17. Defendant Tyler R. White ("Defendant White"), badge number 1362, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant White at 8691

5

Northwest Dr. Southaven, Mississippi 38671. Defendant White is named in this action in his individual capacity.

18. Defendant Waylon D. Banks ("Defendant Banks"), badge number 1334, is or was at all times relevant to this Complaint a SPD officer employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Banks at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Banks is named in this action in his individual capacity.

19. Defendant Fredrick Payne ("Defendant Payne"), badge number 1356, is or was at all times relevant to this Complaint a SPD sergeant employed by the City and acted, by virtue of his position, under color of state law. Service may be made upon Defendant Payne at 8691 Northwest Dr. Southaven, Mississippi 38671. Defendant Payne is named in this action in his individual capacity.

20. As used herein, the phrases "Individually Named Defendants" and "SPD Officers" refers to Defendants Roberts, Foster, Kirkland, Rainbolt, Stokes, Tessaro, Becker, Russell, Smith, Magsby, White, Banks, and Payne both collectively and individually.

**IV.**

## FACTUAL ALLEGATIONS

21. Plaintiff Walker is a 48-year-old African American man.

22. Plaintiff Abram is a 22-year-old African American man.

23. On December 24, 2019, Plaintiff Abram was providing a ride to Plaintiff Walker and detoured to stop by the Waffle House located at 8939 Hamilton Road, Southaven, Mississippi to wish an acquaintance a happy birthday. Plaintiff Abram exited the vehicle and entered the Waffle House to wish his acquaintance a happy birthday.

24.     While present at the Waffle House another patron had a dispute with a waitress. This dispute did not involve Plaintiff Abram, as he had purchased no food and had only momentarily been present in the Waffle House. Plaintiff Abram then exited the Waffle House and returned to his vehicle so Plaintiffs could return to their travels. Plaintiffs exited the Waffle House parking lot at a normal rate of speed and were not followed or approached by police officers.

25.     At or around 0320 hours, after Plaintiffs had already departed the area, Defendant Roberts and other SPD Officers responded to the Waffle House for a disturbance. At no point during this encounter did Defendant Roberts or other SPD Officers see Plaintiffs[1], nor did Plaintiffs flee from Defendant Roberts or other SPD Officers, despite the incident narrative completed by Defendant Roberts[2] stating otherwise. This narrative was used as the basis for the arrest and subsequent use of excessive force on Plaintiffs. After a minute and five seconds of being in the parking lot, a SPD Officer, not believed to be Defendant Roberts due to the vehicle type, sped out of the parking lot and even failed to yield at a stop sign while disregarding other various traffic laws.[3]

26.     Nearly thirty (30) minutes after their departure from the Waffle House, Plaintiffs realized they had lost a set of keys and Plaintiff Abram drove back to the Waffle House believing he may have lost them in the parking lot. Upon arrival back at the Waffle House[4], Plaintiff Abram used the flashlight function of his cell phone to search the parking lot.  Plaintiff Abram also walked into the Waffle House to see if the keys had been dropped inside.  Plaintiff Walker

---

[1] Plaintiffs contemporaneously file a Motion with this Court seeking leave to file Exhibit 1, the Waffle House surveillance footage via thumb drive. Exhibit 1 00:25 – 21:06. While one officer in a car drove off hastily, the remaining SPD officers did not fully depart the parking lot until 21:06.
[2] Exhibit 2, pg. 4
[3] Exhibit 1 between 1:30 – 01:40.
[4] Exhibit 1 28:50.

maneuvered the vehicle so that the headlights would shine on the parking area and assist in searching for the keys.[5]

27.     At or around 0341 hours Defendants Payne and Roberts, sped through the parking lot toward Plaintiff Abram and the vehicle, which was still being operated by Plaintiff Walker. Startled by the abrupt and threatening manner in which the police cars were approaching, Plaintiff Abram reentered his vehicle from the passenger side.

28.     At this point, Defendants Payne and Roberts seized Plaintiffs without probable cause or reasonable suspicion that a crime had been committed by boxing in Plaintiffs' vehicle, and even ramming the vehicle to restrict its movement.

29.     Defendant Payne exited his vehicle and began beating on Plaintiffs' vehicle with his gun and threatening Plaintiffs with death or imminent serious bodily harm by pointing his gun at their heads.[6]

30.     Having no idea why the officers were behaving so aggressively toward Plaintiffs and afraid for his life, Plaintiff Walker attempted to maneuver the vehicle away from Defendant Payne to avoid being shot.  At no point did Plaintiff Walker drive his vehicle toward Defendant Payne in a manner that would indicate any intent to harm Defendant Payne.

31.     Defendant Payne then ran to the other side of the vehicle and began beating the passenger window out repeatedly with a baton.[7]

32.     Defendant Roberts proceeded to threaten Plaintiff Walker with death or imminent serious bodily harm by pointing his firearm at him while Plaintiff Walker exited the driver side of the vehicle and laid face down on the ground with his hands outstretched and visible.[8]

---

[5] Exhibit 1 28:50 – 32:50.
[6] Exhibit 1 33:02 - :06.
[7] Exhibit 1 33:13 - :17.
[8] Exhibit 1 33:18.

33.     Despite the fact that Plaintiff Walker was not resisting and was lying still, face down with his hands fully visible and accessible, Defendant Payne proceeded to strike Plaintiff Walker with his fist repeatedly while Plaintiff Walker's head was against the pavement.[9]

34.     Another SPD Officer also struck Plaintiff Walker repeatedly, despite the fact that Plaintiff Walker was offering no resistance to the officers.[10]

35.     Plaintiff Abram was dragged out of the passenger side of the car the through the glass which Defendant Payne had broken, resulting in cuts and abrasions.

36.     Plaintiff Abram was also brutally assaulted while he was lying on the ground, not resisting or threatening officers in any way.  Plaintiff Abram suffered bleeding, swelling, and bruising to his head as a result of the assault.[11]

37.     SPD Officers have clearly never been adequately trained on the nature of an arrest or the limits of their authority under the Fourth Amendment. At no point in time did SPD Officers attempt to obtain a warrant and completely lacked any exigent circumstances to intercept and viciously assault Plaintiffs, who had not committed a crime. SPD Officers knew that they did not have an articulable, individualized reasonable suspicion, let alone probable cause to either conduct a warrantless arrest or to obtain a warrant on Plaintiffs. SPD Officers violently assaulted and falsely arrested Plaintiffs.

38.     Dozens of SPD Officers, named and likely unnamed, made the incident scene. Those officers either participated in the vicious assault or acquiesced to the false arrest and

---

[9] Exhibit 1 33:23.

[10] Exhibit 1 33:24-:28.

[11] Exhibit 1 33:30 (The Waffle House camera view of Plaintiff Abram is partially obstructed by one of the SPD vehicles. However, the movement of SPD Officers clearly indicate Plaintiff Abram received substantially similar physical punishment by SPD Officers).

malicious prosecution of Plaintiffs. Each of the SPD officers named and unnamed failed to take reasonable measures to protect Plaintiffs from other SPD officers' use of excessive force.

39. SPD Officers, in an attempt to cover up their own illegal conduct coordinated for the arresting officers to submit false narratives to hide their misdeeds and stage excuses for subsequent criminal charges. Specifically, Defendants Roberts, Foster, Payne, Wilson, Kirkland submitted false narratives of events in their official records, making near identical material misstatements of facts and omissions to support their conduct and false charges against Plaintiffs of *inter alia*, disorderly conduct, resisting arrest, and fleeing law enforcement.

40. SPD Officers intentionally corrupted the official written record to support false criminal charges and to cover up their own misdeeds.

41. The incident report is attached hereto as **Exhibit 2**. Defendant Roberts incident narrative is found on pages four (4) and five (5). The fabrications that Defendant Roberts placed in his report, in the official record, include but are not limited to the following:

> (a) "Early, I was dispatched to Waffle House for a disturbance. When I arrived one of the suspect vehicles were trying to leave. I tried boxing him in but he jumped the side walk, in front of the Waffle house and fled the parking lot." This is false.[12] Defendant Rogers knew of the falsity of the statement at the time he put it in the official record.

> (b) "He put it in reverse backing into my car. Then went forward, almost striking Sgt. Payne and pinning him in between their cars." This is false.[13] Defendant Rogers knew of the falsity of the statement at the time he put it in the official record.

> (c) "I was on the driver's side and so was Sgt. Payne. After a struggle to remove the driver from the driver's seat we finally removed him pulling

---

[12] Exhibit 1 00:25 – 20:06. While one officer in a car drove off hastily, the remaining SPD officers did not fully depart the parking lot until 20:06 and the vehicle that did drive off was not in active pursuit of any vehicle that had left the parking lot. Additionally, the vehicle that left was a car and not an SUV, the type of vehicle driven by Defendant Roberts.

[13] Exhibit 1 33:03 - :06. Defendant Payne put himself between Plaintiffs' vehicle and his own car. Plaintiff Walker did not try moving the vehicle forward until Defendant Payne was completely out of the way. Plaintiffs never attempted to use the vehicle to injury SPD Officers.

out and to the ground." This is false.[14] Defendant Rogers knew of the falsity of the statement at the time he put in in the official record.

42.     Defendant Foster's incident narrative is found within Exhibit 2 at page six (6). The fabrications that Defendant Foster placed in his report, in the official record, include but are not limited to the following:

(a)     "As Sergeant Payne attempted to get the driver out of the vehicle, the driver continued to accelerate almost running over Sergeant Payne." This was false.[15]

(b)     "Both the drive and passenger were resistive during their arrest." This was false.[16]

43.     Defendant Foster knew of the falsity of these statements at the time he put it in the official record.

44.     Defendant Payne's incident narrative is found within Exhibit 2 on pages eighth (8) and nine (9). The fabrications that Defendant Payne placed in his report, in the official record, include but are not limited to the following:

(a)     "A short time later, the driver raised his hands, but still refused [to] open the door and get out. Eventually the driver, which was the most obvious and immediate threat at the time, was removed from the car. By that time I had moved to the driver-side of the car and was helping Officer Roberts." This was false.[17]

(b)     "Once the passenger was removed from the vehicle, he refused to produce his hands, after many, many loud verbal commands to do so. I utilized hard empty hand control to his back area until he finally allowed his hands to be placed into handcuffs, searched, and secured in a patrol car." This is false.[18]

---

[14] Exhibit 1 33:17 - :20. Plaintiff Walker fully complies and lays on the ground without any resistance and is immediately and viciously assaulted by no less than two SPD Officers.

[15] *See* footnote 14.

[16] *See* footnote 15.

[17] *See* footnote 15.

[18] Exhibit 1 33:35 - :50. While the Waffle House video is obstructed, Defendant Payne's recent closed fist strike of Plaintiff Walker and Plaintiff Abram's statement of events strongly support that Defendant Payne used greater force than empty hand control.

11

45. Defendant Payne knew of the falsity of these statements at the time he put it in the official record.

46. Furthermore, Defendant Payne omitted from the official record his fist strikes to the head of Plaintiff Walker who was not resisting and was lying face down on the pavement with his head against the pavement.

47. Defendant Wilson's incident narrative is found within Exhibit 2 at page twelve (12). The fabrications that Defendant Wilson placed in his report, in the official record, include but are not limited to the following:

> (a) "The driver refused to place his hands behind his back." This was false.[19]

48. Defendant Wilson knew of the falsity of this statement at the time he put it in the official record.

49. Furthermore, Defendant Wilson omitted from the official record that Defendants Payne and Roberts began immediately assaulting Plaintiff Walker who was not resisting and was lying face down on the pavement with his head against the pavement.

50. Defendant Kirkland's incident narrative is found within Exhibit 2 at pages thirteen (13) and fourteen (14). The fabrications that Defendant Kirkland placed in his report, in the official record, include but are not limited to the following:

> (a) "Once the vehicle was immobilized, the driver opened his door and appeared to be trying to flee the scene on foot. Officer Roberts and Sergeant Payne quickly got to the driver and put him into handcuffs." This is blatantly false.[20]

51. Defendant Kirkland knew of the falsity of these statements at the time he put it in the official record.

---

[19] *See* footnote 15.
[20] *See* footnote 15.

12

52.     Furthermore, Defendant Kirkland omitted from the official record that Defendants Payne and Roberts began immediately assaulting Plaintiff Walker who was fully complying and lying face down on the pavement with his head against the pavement.

53.     Additionally, all SPD Officers omitted the excessive force used against both Plaintiffs in any official record.

54.     Defendant Roberts charged Plaintiff Walker with counts of Assault, Aggravated on Police (Miss. Code Ann. § 97-3-7), Disorderly Conduct (Miss. Code Ann. § 97-35-7), Public Drunk (Miss. Code Ann. § 97-29-47), Resisting Arrest (Miss. Code Ann. § 97-9-73), Driving Under Influence 1st Offense (Miss. Code Ann. § 63-11-30), Fleeing Law Enforcement (Miss. Code Ann. § 97-9-72) and False Information (Miss. Code Ann. § 97-9-79) and swore out an affidavit falsely stating facts to support these charges, even though Defendant Roberts knew these statements and facts to be false and he lacked probable cause or reasonable articulable suspicion to even initiate an encounter with Plaintiffs, let alone arrest them.

55.     Defendant Foster charged Plaintiff Abram with Disorderly Conduct (Miss. Code Ann. § 97-35-7), Public Drunk (Miss. Code Ann. § 97-29-47), and Resisting Arrest (Miss. Code Ann. § 97-9-73) and swore out an affidavit falsely stating facts to support these charges, even though Defendant Foster knew these statements and facts to be false and he lacked probable cause or reasonable articulable suspicion to even initiate an encounter with Plaintiffs, let alone arrest them.

56.     On or about January 13, 2020, the United States Probation Office (hereinafter "USPO") conducted an interview with Southaven Police Chief Macon Moore (hereinafter "Chief Moore"). During this interview, the USPO was advised by Chief Moore a follow-up investigation into the arrest of Plaintiffs was conducted. Chief Moore advised that the incident

involving Mr. Walker and SPD Officers had been forwarded to the Federal Bureau of Investigation. Furthermore, the USPO received court documentation reflecting that the charge of Aggravated Assault on Police had been passed to the inactive docket on December 27, 2019.

57. On or about April 16, 2020 Plaintiffs received a letter from the Southaven Municipal Court indicating that they had a new court date of June 24, 2020, for their charges.

58. On or about June 24, 2020, the Southaven Municipal Court dismissed Plaintiff Walker's disorderly conduct, dui, fleeing law enforcement officers, false information to law enforcement officer, and resisting arrest charges.

59. On June 4, 2021, the Southaven Municipal Court Judge dismissed Plaintiff Walker's remaining charge of Aggravated Assault on Police/Fire/School Officer with Weapon which was remanded to the inactive docket on December 27, 2019 because no further action had been taken on the charge by the prosecution since it was remanded seventeen (17) months prior.

60. On June 10, 2020, the Southaven Municipal Court dismissed Plaintiff Abram's charges of disorderly conduct, public drunk, and resisting arrest.

61. Upon information and belief, SPD conducted an internal investigation and fired multiple SPD Officers, including but not limited to Defendants Foster and Roberts for their unconstitutional actions, excessive force, and fraudulent narratives.

62. On information and belief and in a manner that can be more fully proven through discovery, the City, through its policymakers, has a clear and persistent pattern of failing to discipline officers for constitutional violations or has policies that are insufficient to protect the constitutional rights of individuals as those policies are applied and understood within the SPD. This is evident from the fact that dozens of officers violently assaulted Plaintiffs without probable cause or reasonable articulable suspicion that a crime had occurred, multiple SPD

14

Officers falsified official records, and the City allowed Plaintiffs to be falsely arrested and maliciously prosecuted in violation of Plaintiffs' clearly established rights.

63.     In order for this incident to have occurred and only two of the SPD Officers to have been terminated one of two things must be true, either the City's policies are so woefully constitutionally deficient as to rise to the level of having caused Plaintiffs' injuries, or, more likely, SPD Officers are so inadequately trained in their duties under the Fourth and Fourteenth Amendments that this failure to train constitutes a policy or custom that caused Plaintiffs' injuries.

## V.
## CAUSES OF ACTION

### COUNT 1 – CIVIL CONSPIRACY
### VIOLATION OF 42 U.S.C. § 1983
### (AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS)

64.     Plaintiffs re-allege paragraphs 1-63 of this Complaint as if set forth verbatim herein.

65.     At all times relevant to this matter, the Individually Named Defendants acted in concert with, at the direction of, and as agents of, one another to commit the foregoing tortious misconduct, and all Defendants acted under color of law.

66.     At all times relevant to this matter, the Individually Named Defendants had the intent and knowledge of one another's intent to accomplish by concert an unlawful purpose, or to accomplish by concert a lawful purpose by unlawful means, all the foregoing tortious misconduct, including conspiring with one another to use unnecessary and excessive force against Plaintiffs.

15

67.     The Individually Named Defendants conspired with one another and agreed to injure Plaintiffs through unconstitutional actions under color of law, resulting in the actual constitutional violations suffered by Plaintiffs.

68.     The Individually Named Defendants shared in the general conspiratorial objective to injure Plaintiffs and attempted to purposefully hide the violations of Plaintiffs' constitutional rights.

69.     The Individually Named Defendants are liable for one another's acts undertaken in furtherance of their civil conspiracy, and each Defendant is jointly and severally liable for the unlawful acts of each other Defendant.

**COUNT 2 – MALICIOUS PROSECUTION
IN VIOLATION OF THE FOURTH AMENDMENT
42 U.S.C. § 1983
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS)**

70.     Plaintiffs re-allege paragraphs 1-69 of this Complaint as if set forth verbatim herein.

71.     Defendant Roberts charged Plaintiff Walker with counts of Assault, Aggravated on Police (Miss. Code Ann. § 97-3-7), Disorderly Conduct (Miss. Code Ann. § 97-35-7), Public Drunk (Miss. Code Ann. § 97-29-47), Resisting Arrest (Miss. Code Ann. § 97-9-73), Driving Under Influence 1st Offense (Miss. Code Ann. § 63-11-30), Fleeing Law Enforcement (Miss. Code Ann. § 97-9-72) and False Information (Miss. Code Ann. § 97-9-79) and swore out an affidavit falsely stating facts to support these charges, even though Defendant Roberts knew these statements and facts to be false and he lacked probable cause or reasonable articulable suspicion to even initiate an encounter with Plaintiffs, let alone arrest them.

72.     Defendant Foster charged Plaintiff Abram Disorderly Conduct (Miss. Code Ann. § 97-35-7), Public Drunk (Miss. Code Ann. § 97-29-47), and Resisting Arrest (Miss. Code Ann.

§ 97-9-73) and swore out an affidavit falsely stating facts to support these charges, even though Defendant Foster knew these statements and facts to be false and he lacked probable cause or reasonable articulable suspicion to even initiate an encounter with Plaintiffs, let alone arrest them.

73.     Each of the Individually Named Defendants knew these charges were false and were being brought to cover up the actions of the Individually Named Defendants.

74.     Each of the Individually Named Defendants acted under color of state law, when they violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

75.     Defendants Roberts, Payne, Foster, Wilson and Kirkland created false narratives on the record of arrest utilized in the malicious prosecution of Plaintiffs.

76.     Additionally, Roberts and Foster falsely testified under oath on their Affidavit of Complaint, which caused the prosecutor to proceed forward with charges against Plaintiffs.

77.     The charges against Plaintiffs resulted in deprivations of their liberty, in that they were taken into custody, jailed, and then forced to comply with pretrial release and attend court dates while defending their cases.

78.     All charges were ultimately resolved in Plaintiffs' favor when they were dismissed.

79.     The Individually Named Defendants acted with malice when they colluded to falsely arrest and charge Plaintiffs with criminal charges.

80.     The testimony Defendants Roberts and Foster provided on their Affidavits of Complaint is demonstrably false and flatly contradicted by evidence within the knowledge of the Defendants at the time of Plaintiffs' arrests.

17

81.    Defendants' false statements and material misrepresentations were intended to mislead the prosecutor into finding probable cause existed to proceed with charges against Plaintiffs, notwithstanding each of the Individually Named Defendants' knowledge that they were untrue.

82.    The Individually Named Defendants' objectively unreasonable actions violated Plaintiffs' clearly established Fourth Amendment rights, and the Individually Named Defendants are not qualifiedly immune from suit.

83.    Plaintiffs suffered injuries, including, but not limited to, violations of their constitutional rights, loss of liberty, humiliation, physical harm, emotional distress, and costs of defense as a direct and proximate result of the Defendants' objectively unreasonable actions.

**COUNT 3 – FALSE ARREST**
**IN VIOLATION OF THE FOURTH AMENDMENT**
**42 US.C. § 1983**
**(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS)**

84.    Plaintiffs re-allege paragraphs 1-83 of this Complaint as if set forth verbatim herein.

85.    Again, Defendant Roberts charged Plaintiff Walker with counts of Assault, Aggravated on Police (Miss. Code Ann. § 97-3-7), Disorderly Conduct (Miss. Code Ann. § 97-35-7), Public Drunk (Miss. Code Ann. § 97-29-47), Resisting Arrest (Miss. Code Ann. § 97-9-73), Driving Under Influence 1st Offense (Miss. Code Ann. § 63-11-30), Fleeing Law Enforcement (Miss. Code Ann. § 97-9-72) and False Information (Miss. Code Ann. § 97-9-79) and swore out an affidavit falsely stating facts to support these charges, even though Defendant Roberts knew these statements and facts to be false and he lacked probable cause or reasonable articulable suspicion to even initiate an encounter with Plaintiffs, let alone arrest them.

18

86.     Again, Defendant Foster charged Plaintiff Abram Disorderly Conduct (Miss. Code Ann. § 97-35-7), Public Drunk (Miss. Code Ann. § 97-29-47), and Resisting Arrest (Miss. Code Ann. § 97-9-73) and swore out an affidavit falsely stating facts to support these charges, even though Defendant Foster knew these statements and facts to be false and he lacked probable cause or reasonable articulable suspicion to even initiate an encounter with Plaintiffs, let alone arrest them.

87.     As alleged above all the Individually Named Defendants acting under color of state law, violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

88.     The Individually Named Defendants lacked reasonable articulable suspicion or probable cause to conduct an investigatory stop or arrest of Plaintiff. Facts and circumstances within the Individually Named Defendants knowledge were insufficient to allow them to believe that Plaintiffs had committed a crime, were committing a crime, or were about to commit a crime.

89.     Defendants Roberts, Payne, Foster, Wilson and Kirkland created false narratives on the record of arrest utilized in the false arrests of Plaintiffs.

90.     Though Defendants Roberts and Foster submitted Affidavits of Complaint to a neutral magistrate for a probable cause determination, they knowingly submitted fraudulent affidavits with the intent to cause Plaintiffs' unlawful detention.

91.     The charges against Plaintiffs resulted in a deprivation of their liberty, in that they were taken into custody, jailed, and then forced to comply with pretrial release and attend court dates defending their cases.

92. All charges were ultimately resolved in Plaintiffs' favor when they were dismissed.

93. The Individually Named Defendants acted with malice and utter disregard and indifference toward Plaintiffs' constitutional rights when they falsely arrested and charged Plaintiffs.

94. The testimony Defendants Roberts and Foster provided on their Affidavits of Complaint and the narratives listed in the record of arrest to which both Defendants Roberts and Foster were listed as arresting officers is demonstrably false and flatly contradicted by evidence within the knowledge of Defendants at the time of Plaintiffs' arrests.

95. The Individually Named Defendants lacked any reasonable articulable suspicion or probable cause to believe that Plaintiffs had committed a crime, were committing a crime, or were about to commit a crime.

96. The Individually Named Defendants' objectively unreasonable actions violated Plaintiffs' clearly established Fourth Amendment rights, and the Individually Named Defendants are not qualifiedly immune from suit.

97. Plaintiffs suffered injuries, including, but not limited to, violations of their constitutional rights, loss of liberty, humiliation, physical injury, emotional distress, and costs of defense as a direct and proximate result of Defendants' objectively unreasonable actions.

### COUNT 4 – USE OF AND DELIBERATE INDIFFERENCE TO UNNECESSARY & EXCESSIVE FORCE VIOLATION OF 42 U.S.C. § 1983 (AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS)

98. Plaintiffs re-allege paragraphs 1-97 of this Complaint as if set forth verbatim herein.

99. Defendants Roberts and Payne, among other individually named defendants and unknown SPD officers, used excessive force when they seized and beat Plaintiffs with no lawful reason. SPD Officer's unjustified and excessive use of force deprived Plaintiffs of their fundamental interest in being secure in their persons against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution, as applied to state actors by the Fourteenth Amendment.

100. Dozens of SPD Officers made the incident scene. Those officers either participated in the vicious assault or acquiesced to the excessive force, false arrest, and malicious prosecution of Plaintiffs. Each of the SPD officers, those individually-named and those unknown at this time, failed to take reasonable measures to protect the Plaintiffs from other SPD officers' use of excessive force and were therefore deliberately indifferent to the unwarranted and unnecessary force utilized against Plaintiffs.

101. As alleged above the Individually Named Defendants acting under color of state law, violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution.

102. At the moment SPD Officers attacked Plaintiffs they lacked reasonable articulable suspicion or probable cause that Plaintiffs had committed any crime, were committing a crime, or would commit a crime. Furthermore, they lacked any probable cause to believe that Plaintiffs posed a threat of serious bodily injury or real danger of death. Instead, SPD Officers subjectively knew that Plaintiffs posed no threat to them or to anyone else.

**COUNT 5 – UNCONSTITUTIONAL PRACTICES/DE FACTO POLICY
USE OF FORCE
VIOLATION OF 42 U.S.C. § 1983
(AGAINST THE CITY)**

103. Plaintiffs re-allege paragraphs 1-102 of this Complaint as if set forth verbatim herein.

104. The City, acting by and through its policymakers, officers, and agents, and acting under color of state law, violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution

105. The acts and omissions of the Defendants were the direct and proximate result of the customs, practices, and/or de facto policies of the City.

106. Such customs, practices, or de facto policies here are evidenced by collusion of multiple officers agreeing to assault Plaintiffs and falsifying evidence and testimony to cover the Individually Named Defendants' use of unwarranted and excessive force. It is clear that the City has a policy or custom of using force on individuals without reasonable suspicion whom they know pose no threat.

107. Such customs, practices, or de facto policies include but are not limited to an ongoing pattern of deliberate indifference to the excessive use of force.

108. The customs, practices, and/or de facto policies of the City were a direct and proximate cause of Plaintiffs' injuries, in that those customs, practices, and/or de facto policies were being followed by SPD Officers whose actions gave rise to this civil action.

109. Upon information and belief, the City's policies and procedures or de facto policies permit its officers to use the level of force used on Plaintiffs as detailed in this Complaint.

110.    The City failed to promulgate appropriate policies or procedures or take other measures to prevent the use of excessive or unlawful force and the City has been deliberately indifferent to the unlawful use of force by the City's public safety officers as evidenced by the fact that such a number SPD Officers, were so inadequately apprised of their Fourth and Fourteenth Amendment duties as to allow the events described in this complaint to have occurred.

111.    Further, on information and belief, the City conducted an investigation into this matter that failed to result in discipline for each of the officers involved despite their clear violation of numerous rights secured by the Constitution. The unlawful seizure and violent use of excessive force against Plaintiffs was undertaken by numerous SPD Officers under directions of supervisors. Plaintiffs aver that as evidenced by the foregoing, especially the fact that so many individuals were so inadequately apprised of their Fourth and Fourteenth Amendment duties that the City must necessarily have a pattern or practice of ratifying such incidents that this pattern or practice of ratification caused Plaintiffs' injuries.

112.    As a direct and proximate result of the customs, practices, and/or de facto policies of the City, Plaintiffs suffered injuries and damages as detailed in this Complaint.

**COUNT 6 – UNCONSTITUTIONAL PRACTICES/DE FACTO
ARREST POLICY IN VIOLATION OF THE FOURTH AMENDMENT
VIOLATION OF 42 U.S.C. § 1983
(AGAINST THE CITY)**

113.    Plaintiffs re-alleges paragraph 1-112 of this Complaint as if set forth verbatim herein.

114.    The City, acting by and through its policymakers, officers, and agents, and acting under color of state law, violated the rights of Plaintiffs secured by the Fourth and Fourteenth Amendments of the U.S. Constitution

115. The acts and omissions of the Defendants were the direct and proximate result of the customs, practices, and/or de facto policies of the City.

116. Such customs, practices, or de facto policies include but are not limited to an ongoing pattern of "detaining" people without either probable cause or reasonable suspicion. The City's policy of "detaining" individuals without probable cause constitutes a violation of the Fourth Amendment.

117. The customs, practices, and/or de facto policies of The City were a direct and proximate cause of Plaintiffs' injuries, in that those customs, practices, and/or de facto policies were being followed by SPD Officers whose actions gave rise to this civil action.

118. Upon information and belief, The City's policies and procedures or de facto policies permit SPD Officers to unlawfully seize individuals without probable cause. Plaintiffs were unlawfully seized within the meaning of the Fourth Amendment as detailed in this Complaint.

119. The City failed to promulgate appropriate policies or procedures or take other measures to prevent unlawful seizure, and the City has been deliberately indifferent to unlawful seizures of individuals by SPD Officers.

120. As a direct and proximate result of the customs, practices, and/or de facto policies of the City, Plaintiffs suffered injuries and damages as detailed in this Complaint.

**COUNT 7 – SUPERVISORY LIABILITY – FAILURE TO TRAIN**
**VIOLATION OF 42 U.S.C. § 1983**
**(AGAINST THE CITY)**

121. Plaintiffs re-allege paragraphs 1-120 of this Complaint as if set forth verbatim herein.

122. The City failed to provide adequate training and/or supervision to its public safety officers regarding arrests and appropriate use of force. The City has a non-delegable duty and responsibility to formulate, oversee, and implement official policies, practices, customs, and procedures to be carried out by its public safety officers and other personnel.

123. The level of legal ignorance on a widespread basis demonstrates that the City has failed to properly train or supervise its law enforcement officers on fundamental principles regarding arrests and appropriate use of force.

124. As a direct and proximate consequence of the failure on the part of the City to properly develop, implement, and otherwise devise a policy of adequate training and/or supervision for its public safety officers, Plaintiffs were deprived of civil and constitutional rights, privileges, and immunities. Properly trained and supervised public safety officers and other personnel would have known not to engage in the acts which resulted in the deprivation of the civil and constitutional rights of Plaintiffs.

125. As a result of the failure to act, train, and/or supervise its public safety officers, the City is liable for damages for the malicious prosecution, false arrest, and damages for the excessive use of force committed against Plaintiffs pursuant to 42 U.S.C. §1983.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants on each Count of the Complaint and prays for the following relief:

1. Issuance of process for service of Defendants;

2. Trial by jury on all counts;

3. Compensatory damages;

4. Punitive damages against the Individually Named Defendants;

5.         Award of Plaintiffs' reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

6.         Award of costs and expenses incurred in this action;

7.         Award of interest on any judgment; and

8.         Grant Plaintiffs such further relief as the Court may deem just and proper.

Respectfully submitted,

BY:   s/ *Brandon Flechas*
      BRANDON FLECHAS (MSB#102283)
      PHILIP A. STROUD (MSB# 99401)
      THE STROUD LAW FIRM, P.C.
      5779 Getwell Road, Suite C-1
      Southaven, MS 38672
      Tel. (662)536-5656
      Fax (662)536-5657
      brandon@stroudlawyers.com
      philip@stroudlawyers.com
     *ATTORNEYS FOR PLAINTIFFS*